

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| HARMONY POINTE, LLC, | ) | No. ED112620 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | 2311-CC00860 |
| | ) | |
| CITY OF COTTLEVILLE, MO, et al., | ) | Honorable W. Christopher McDonough |
| | ) | |
| Appellants. | ) | Filed: March 11, 2025 |

The City of Cottleville, Missouri, (the "City") appeals the trial court's judgment reversing a decision by the City's Board of Adjustment ("Board of Adjustment" or "Board") upholding a stop work order issued by the City to Harmony Pointe, LLC ("Harmony Pointe").[1] We affirm the trial court's judgment reversing the Board of Adjustment's decision.

## I. BACKGROUND

Harmony Pointe planned to construct a mixed-use project consisting of multi-family apartments and other commercial developments (the "project") on its property located along Highway N in Cottleville, Missouri (the "project site"). In April 2022, Harmony Pointe applied to the City for approval of the final plan for the project. On May 18, 2022, the City approved the project's final plan application.

---

[1] Appellants in this appeal include the City, Chairman of the Board Michael Louis, and Board members Nathan Tormula, Tom Longinette, and Jonathan Layfield.

By July 2022, Harmony Pointe had applied to the City seeking approval of Harmony Pointe's construction plan for the project. After several changes to the construction plan based on comments from multiple utility providers, Harmony Pointe submitted a revised construction plan to the City on October 24, 2022. On November 1, 2022, the City finally approved Harmony Pointe's construction plan, which included detailed requirements for excavation and grading of the project site along with the clearing of trees and other vegetation from the site.

On November 7, 2022, the City issued a building permit to Harmony Pointe, and Harmony Pointe had geotechnical engineers drill borings in multiple locations at the project site in order to test the quality of the soil and assess other subsurface conditions. Then, in the Spring of 2023, Harmony Pointe had various contractors complete work on the project site. On March 28, an engineering company staked the project site for tree clearing. On March 29 and 30, a grading company performed "clearing activities," including clearing trees from the project site. On May 4, the engineering company surveyed and staked the corners of a building on the project site along with offsets from the building. On May 7, Harmony Pointe's general contractor delivered and erected a job board at the project site. On May 9, the general contractor met with Ameren to review overhead power lines in relation to the project. On four separate days between May 9 and 15, the engineering company performed "hydroexcavation" on the project site, which involved the use of heavy machinery to add water to the soil and dig into it. As of May 15, the engineering company had begun fabricating steel settlement plates for use on the project site. Ultimately, Harmony Pointe paid a total of $60,176.45 for the aforementioned work completed on the project site between November 7, 2022, and May 15, 2023.

On May 19, 2023, the City issued Harmony Pointe a stop work order. The stop work order claimed that Harmony Pointe "ha[d] not begun construction on the [p]roject in accordance

2

with . . . [s]ection 405.390[(C)]" of the City's municipal code and prohibited any activity in furtherance of the project. The City's order quoted from section 405.390(C) of the City's municipal code, which provides that "[a]pproval of the final plan in a [Planned Unit Development] shall expire and be of no effect one (1) year after the date of approval unless construction is begun and diligently pursued in accordance with the approved plan." Accordingly, the City issued the stop work order purportedly because construction had not begun on the project prior to May 18, 2023, and therefore the final plan approved by the City on May 18, 2022, expired and had no effect.

Harmony Pointe appealed the City's issuance of the stop work order to the Board of Adjustment, and a hearing was subsequently held before the Board on July 20, 2023. At the end of the hearing, two Board members voted to rescind the City's stop work order and two Board members voted to uphold it, which resulted in the City's stop work order being upheld. The Board then voted to adopt the City's proposed findings of fact and conclusions of law shortly thereafter.

Harmony Pointe appealed the Board's decision upholding the stop work order to the trial court. The trial court reversed the Board's decision and declared the City's stop work order null and void, finding Harmony Pointe began construction on the project prior to May 18, 2023. This appeal followed.[2]

_____

[2] To avoid unnecessary repetition, additional facts relevant to Harmony Pointe's arguments on appeal will be set forth in Section II.B. of this opinion.

## II.   DISCUSSION

Harmony Pointe raises two points on appeal.[3]  The first point argues the Board erred in upholding the stop work order because the order was not authorized by law under section 405.390(C) of the City's municipal code.  In the second point on appeal, Harmony Pointe similarly argues the Board erred in upholding the stop work order because the order was not authorized by law under section 405.400 of the City's municipal code.  Because we find the first point dispositive to this appeal, we need not reach the second point.

### A.   Standard of Review

On appeal, this Court reviews the findings of fact and conclusions of law of the Board of Adjustment rather than the trial court's judgment.  *See Antioch Community Church v. Board of Zoning Adjustment of City of Kansas City*, 543 S.W.3d 28, 33 (Mo. banc 2018); *Moto, Inc. v. Board of Adjustment of City of St. Louis*, 88 S.W.3d 96, 99 (Mo. App. E.D. 2002).  The scope of our review is limited to determination of whether the Board's decision "is authorized by law and is supported by competent and substantial evidence upon the whole record."  *See Antioch*, 543 S.W.3d at 34 (citation omitted).

In this case, Harmony Pointe does not allege any error as to the competency or sufficiency of the evidence supporting the Board's decision, and instead argues the Board erred in its interpretation and application of certain provisions of the City's municipal code.  Therefore, this Court reviews the decision of the Board of Adjustment to determine whether it is authorized by law.  *See State ex rel. Vandenboom v. Board of Zoning Adjustment of City of*

---

[3] Because the trial court reversed the decision of the Board of Adjustment and this Court reviews the decision of the Board rather than the trial court, Harmony Pointe was required to file the first brief in this appeal as the party aggrieved by the Board's decision.  *See* Missouri Supreme Court Rule 84.05(e) (2024); *Antioch Community Church v. Board of Zoning Adjustment of City of Kansas City*, 543 S.W.3d 28, 33 (Mo. banc 2018); *Moto, Inc. v. Board of Adjustment of City of St. Louis*, 88 S.W.3d 96, 99 (Mo. App. E.D. 2002).

*Kansas City*, 633 S.W.3d 446, 456 (Mo. App. W.D. 2021). Whether the decision is authorized by law is a legal question subject to *de novo* review. *Antioch*, 543 S.W.3d at 34.

**B.      Point One on Appeal**

Harmony Pointe's first point on appeal argues the Board erred in upholding the City's stop work order because the order was not authorized by law under section 405.390(C) of the City's municipal code. We agree.

The Board of Adjustment in this case found that "[c]onstruction under the [f]inal [p]lan and related to the [p]roject had not begun on or before May 18, 2023," and therefore "[t]he [f]inal [p]lan expired . . . and is of no further force and effect." The Board's decision hinged upon its finding that the tasks completed by Harmony Pointe on the project prior to May 18, 2023, did not qualify as "construction" under the Board's interpretation of section 405.390(C) of the City's municipal code.

Municipal codes and ordinances are interpreted using the same rules governing the interpretation of statutes. *City of St. Peters v. Roeder*, 466 S.W.3d 538, 541, 543-44 (Mo. banc 2015). The "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014) (citation omitted). Courts look to other rules of statutory interpretation only when the meaning is ambiguous or would lead to an illogical result that defeats the purpose of the legislation. *Id.* "In determining legislative intent, no portion of a statute is read in isolation, but rather is read in context to the entire statute, harmonizing all provisions." *Aquila Foreign Qualifications Corp. v. Director of Revenue*, 362 S.W.3d 1, 4 (Mo. banc 2012). Finally, statutory interpretation should not be hyper-technical, but reasonable and logical. *Ivie*, 439 S.W.3d at 203.

5

Section 405.390(C) of the City's municipal code provides that "[a]pproval of the final plan in a [Planned Unit Development] shall expire and be of no effect one (1) year after the date of approval unless construction is begun and diligently pursued in accordance with the approved plan." *Id*. The parties agree and the record supports that the applicable date of approval of the final plan for the project is May 18, 2022, for purposes of applying section 405.390(C). Thus, Harmony Pointe was required to begin "construction" on the project prior to May 18, 2023, in order to avoid expiration of the final plan's approval under section 405.390(C). *See id*.

It is undisputed by the parties that Harmony Pointe completed the following work on the project between November 7, 2022, and May 15, 2023: borings were drilled in multiple locations on the project site; the project site was staked for tree clearing; trees were cleared from the project site; the project site was surveyed and corners of a structure and offsets from that structure were staked; a job board was delivered and erected at the project site; "hydroexcavation" of the project site was performed over the course of four days; and steel settlement plates were at least partially fabricated for use on the project site. The operative question on appeal is whether any or all of this work constitutes "construction" under section 405.390(C).

The City's municipal code contains no explicit definition of the term "construction" that is directly applicable to section 405.390(C). *See id*.; section 405.020 (providing definitions for chapter 405 of the City's municipal code)*; see also Ivie*, 439 S.W.3d at 203 (any definitions provided by the legislature are binding on the courts). Accordingly, the Board's findings of fact and conclusions of law in this case defined "construction" by isolating the term and looking to its dictionary definition. The Board found that because Harmony Pointe had not "combined or

6

arranged parts[] or elements[] into a structure or composite whole," the tasks completed on the project "do not qualify as 'construction.'"

However, in determining whether the work completed by Harmony Pointe on the project constitutes "construction" under the plain language of section 405.390(C), we cannot read the term in isolation. *See id.*; *Ivie*, 439 S.W.3d at 202; *Aquila*, 362 S.W.3d at 4. Instead, we must view the term "construction" in the context of the entire section of the municipal code at issue and harmonize all provisions. *See Aquila*, 362 S.W.3d at 4; *see also Roeder*, 466 S.W.3d at 541, 543-44.

Section 405.390(C) of the City's municipal code states that "[a]pproval of the final plan in a [Planned Unit Development] shall expire and be of no effect one (1) year after the date of approval unless construction is begun and diligently pursued *in accordance with the approved plan*." (emphasis added). Harmony Pointe's construction plan for the project, which was approved by the City in November 2022, was part of the record before the Board of Adjustment. The approved construction plan includes detailed requirements for "excavations, grading, [and] filling"; a discussion of the removal of "natural vegetation"; and grading notes regarding "the clearance of [] stumps, trees, bushes, shrubs, and weeds." In other words, a significant portion of the work completed by Harmony Pointe on the project prior to May 18, 2023 – including the clearing of trees from the project site and four days' worth of excavation work at the site – was specifically contemplated in the project's construction plan approved by the City.

This Court declines to apply a hyper-technical definition of the term "construction" to categorize the work done by Harmony Pointe on the project. *See Ivie*, 439 S.W.3d at 203. Rather, the plain language of section 405.390(C) combined with the project's construction plan leads to the logical and reasonable conclusion that the significant amount of work done by

7

Harmony Pointe prior to May 18, 2023, qualifies as "construction" in accordance with the City's approved plan. *See id.*; *Ivie*, 439 S.W.3d at 202-03. Therefore, the decision of the Board of Adjustment upholding the stop work order was not authorized by law because the City's approval of the project's final plan had not expired under section 405.390(C). *See id.*; *Antioch*, 543 S.W.3d at 34. Point one is granted.

## III. CONCLUSION

Based on the foregoing, the trial court's judgment reversing the Board of Adjustment's decision is affirmed.

_____
ROBERT M. CLAYTON III, Judge

John P. Torbitzky, P.J., and
Michael S. Wright, J., concur.